[54 NYS3d 662]

# In the Matter of Picard Losier, an Attorney, Respondent.

Second Department, June 7, 2017

---

## APPEARANCES OF COUNSEL

*Faith Lorenzo*, Hauppauge (*Ian P. Barry* of counsel), for Grievance Committee for the Tenth Judicial District.

**OPINION OF THE COURT**

Per Curiam.

By order of the Supreme Court of Pennsylvania dated January 3, 2013, the respondent's resignation was accepted, and he was disbarred on consent from the practice of law in that state. At the time that the respondent tendered his resignation, there was a pending disciplinary proceeding against him based upon a petition for discipline filed with the Office of the Secretary for the Disciplinary Board of the Supreme Court of Pennsylvania (hereinafter the Board) on December 22, 2010, docketed at 256 DB 2010. After a hearing held on April 27, July 19, and August 29, 2011, the Board issued its report and recommendations (hereinafter the Board report), which unanimously recommended to the Supreme Court of Pennsylvania that he be disbarred.

As reflected in the Board report, the facts, briefly summarized, are as follows:

### The Howell Matter

The respondent represented Harry Howell in connection with his claim for workers' compensation benefits. Howell had been awarded benefits through the early part of 1997. On July 24, 1997, the respondent filed a reinstatement petition alleging that Howell became re-disabled as of May 3, 1997. By decision dated August 27, 2002, the reinstatement petition was granted. An appeal filed on behalf of Howell's employer was denied by order dated October 16, 2002.

From November 2002 through April 2003, the respondent received eight checks payable to "Harry Howell," which totaled $101,131.33. The respondent deposited those checks into an escrow account (hereinafter the escrow account), for which he was the sole signatory. The respondent also received counsel fees totaling $25,210.29.

On April 11, 2003, Gayle Frink Johnson, the attorney representing Howell's employer and the workers' compensation insurance carrier (hereinafter PMA), spoke with the respondent and advised him that PMA had recently learned that Howell had died on October 16, 2001. By letter dated May 2, 2003, Johnson forwarded Howell's death certificate to the respondent. After learning of his client's death, the respondent did not take any reasonable steps to locate Howell's heirs.

The respondent admitted that from November 21, 2003, through April 1, 2005, he misappropriated the sum of $86,400

from the Howell escrow funds. In September 2005, the respondent was contacted by, and met with, a special agent with the Pennsylvania Office of Attorney General, Insurance Fraud Section. Sometime in February 2007, the respondent established a new account on behalf of Howell's estate, and deposited the sum of $82,454 into that account.

On or about February 1, 2007, PMA filed a petition for review, seeking to recover the overpayments made to the respondent and Howell. In October 2007, acting on behalf of himself and Howell's estate, the respondent paid to PMA $16,892.57 from the escrow account, and $4,150.38 from his own funds. By order dated December 13, 2007, the Workers' Compensation Judge approved a stipulation entered into between PMA, the respondent, and Howell's estate, and the petition for review was dismissed.

The remaining funds in the escrow account, including interest, were delivered to the attorney for the administrator of the Howell estate in December 2007.

### Pattern of Misconduct in Relation to Maintenance and Handling of Funds

The respondent maintained an IOLTA account at Hudson United Bank (hereinafter the IOLTA account). The Board found, inter alia, that the respondent: (1) routinely advanced funds to clients by drawing checks on the IOLTA account before he received and deposited any funds on behalf of those clients, from January 7, 2003, through November 13, 2007; (2) commingled his own funds with fiduciary funds, from December 2003 through June 2009; (3) failed to maintain required records for the IOLTA account; and (4) deposited fiduciary funds into an attorney account in seven client matters, and failed to transfer those fiduciary funds into the IOLTA account, from May 5, 2003, through December 6, 2004.

Based upon the foregoing and relevant precedent, the Board concluded as follows:

> "Respondent's misconduct was extensive and lengthy in its duration. Respondent commingled his personal funds with fiduciary funds for over eight years; advanced funds to clients for over a decade; and failed to maintain required financial records for client matters transacted through his IOLTA account for over five years. Respondent did

not stop making advances to his clients and commingling funds until 2010. These actions occurred in addition to his egregious misappropriation of the Howell funds. The proper handling of client money goes to the heart of a lawyer's obligation to a client; it follows that the mishandling of such funds abuses the trust between the client and lawyer and must be dealt with severely. In this case, disbarment is necessary to protect the public and maintain the integrity of the bar."

After the Board report was issued, the respondent submitted a resignation from the practice of law in Pennsylvania, dated November 6, 2012, wherein he stated, among other things, that his resignation was freely and voluntarily rendered, he was not being subjected to coercion or duress, and he was fully aware of the implications of submitting his resignation. He also was aware that a disciplinary proceeding was pending, that the material facts and legal conclusions as contained in the Board report were true, and that he could not successfully defend himself against the allegations of professional misconduct. By order of the Supreme Court of Pennsylvania dated January 3, 2013, the respondent's resignation was accepted, and he was disbarred in that state.

Although the respondent was duly served with this Court's order to show cause dated February 24, 2017, he has neither interposed any response thereto, nor requested additional time to respond. Accordingly, there is no impediment to the imposition of reciprocal discipline.

Based on the misconduct underlying the respondent's disbarment by order of the Supreme Court of Pennsylvania dated January 3, 2013, we conclude that reciprocal discipline is warranted, and, effective immediately, the respondent is disbarred from the practice of law.

ENG, P.J., MASTRO, RIVERA, DILLON and MALTESE, JJ., concur.

Ordered that pursuant to 22 NYCRR 1240.13 (c), effective immediately, the respondent, Picard Losier, is disbarred from the practice of law, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent, Picard Losier, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Picard Losier, shall desist and

refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Picard Losier, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).